FILED'08 SEP 17 15:17USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RONALD W. BYRD,**

        Plaintiff,

v.

**ABBIE JOSSIE; et al.,**

        Defendants.

Case Number CV 08-3054-CL

**ORDER**

CLARKE, Magistrate Judge.

Plaintiff Ronald W. Byrd has a mining claim on public land which he has applied to patent. Plaintiff brings this action for review under the Administrative Procedures Act, 5 U.S.C. §§ 701-706 and/or writ of mandamus, 28 U.S.C. § 1361. This court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties have executed written consents for entry of judgment by a magistrate judge (#18). 28 U.S.C. § 636(c). Defendants have filed a motion to withhold a privileged document from the administrative record (#23), which Plaintiff opposes. For the reasons explained below, Defendants' motion is denied.

### DISCUSSION

<u>1. Relevant Procedural History - Mineral Report</u>

Page 1 - ORDER

Plaintiff Ronald W. Byrd and his wife applied in 1990 for a Mineral Patent under the General Mining Act of 1872 for land referred to as the Bailey and Anderson Placer Claim in Josephine County, Oregon. Pursuant to law, a mineral examination was conducted by BLM Certified Mineral Examiner Gerald Capps beginning on October 22, 1990. A report was prepared which went through a technical review and was signed by Certified Review Mineral Examiner Terry Maley on April 7, 1997 and by BLM Medford District Manager David Jones on April 28, 1997 (hereinafter the "1997 Report"). The 1997 Report is part of the Administrative Record at AR 672-734. The process for conducting a mineral examination is set forth in BLM Handbook § 3890-1 attached as Exhibit 1 to Plaintiff's Opposition Memorandum. The examiner is to conduct tests, gather technical data and, applying the applicable legal and technical standards, give an opinion as to whether the patent should be granted or, in the alternative, that a contested administrative case be initiated to challenge the patent claim. The report must be approved by a Certified Review Mineral Examiner (CRME) and those reports that recommend a patent have further agency review.

In the 1997 Report, Mr. Capps concluded that the applicable standards were not met and recommended a contested case be initiated. In March 1997, the BLM initiated a patent contest proceeding. Plaintiff through his counsel made a Freedom of Information Act (FOIA) request for the 1997 Report, which was rejected by the BLM citing exemption 5 which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552 (b) (5). This includes common law privileges such as the deliberative process privilege relied upon in this case. After an appeal, the BLM was required to disclose certain technical data from the 1997 Report as it could be segregated from

Page 2 - ORDER

any deliberative material. It is unclear from the record as to whether the entire 1997 Report was eventually disclosed to Plaintiff and his counsel but as stated above it is now a part of the Administrative Record.

In the fall of 2002, Plaintiff and the BLM after a site visit with experts agreed that additional limited testing would be completed by the BLM. A Stipulated Order was signed by the Administrative Law Judge (ALJ) allowing the additional sampling and postponing the contested case hearing. The order provided that the sampling "shall be admissible in further proceedings to establish either the existence or nonexistence of a valuable discovery." The additional sampling occurred in the summer 2003. The ALJ set a date of June 21, 2004, for production of the report in preparation for a hearing set on June 26, 2004. The BLM released certain data from the 2003 re-sampling to Plaintiff in the spring 2004. The BLM in June 2004 disclosed in the contested case proceeding that, based on the 2003 samples, the examiners were recommending issuance of the patent. The BLM, however, requested a postponement of the upcoming hearing as the report had not been through the required review process. The hearing was postponed.

In July 2006, in response to a status request from the ALJ, the BLM stated the report was still in the review process and was not subject to disclosure under exemption 5 of the FOIA. The BLM indicated another review was needed because one of the authors had retired before signing the report. In October 2006, the BLM moved to dismiss the contested case proceeding without prejudice as the "final report" was not expected until spring 2007. A supporting affidavit from Patrick Geehan indicated that the draft report had been signed by the authors on May 21, 2004, and that Charles Horsburgh had performed a technical review in March 2005. Mr. Geehan

Page 3 - ORDER

indicated the technical comments from the March 2005 review needed to be incorporated into the report that should be final by spring 2007.

In March 2008, the BLM notified Plaintiff and his counsel that the sampling from 2003 was "insufficient to complete a proper minerals examination" because the methodology for the samples did not comply with applicable regulations. The BLM indicated that new samples needed to be taken.

Plaintiff filed this case on May 15, 2008, under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 and/or Writ of Mandamus, 28 U.S.C. § 1361. Plaintiff alleges in his First Claim that the failure and refusal of the BLM to make a decision on his 1990 Patent Claim is "arbitrary, capricious and an abuse of discretion, not in accordance with law and/or constitutes agency action unlawfully withheld or unreasonably delayed under the Administrative Procedures Act, which has caused and threatens serious prejudice and injury to Plaintiff's rights and interests." (Compl. at 10.) Defendants deny Plaintiff's claim. Claim two is moot as the court denied Plaintiff's Motion for a Preliminary Injunction seeking to prevent further sampling that was recently completed.

2. Deliberative Process Privilege

The deliberative process privilege allows the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated. FTC v. Warner Commc'ns Inc., 742 F2d. 1156, 1161 (9th Cir. 1984). This privilege allows agencies "freely to explore possibilities,

Page 4 - ORDER

engage in internal debates, or play devil's advocate without fear of public scrutiny." <u>Carter v. U.S. Dept. of Commerce</u> 307 F.3d 1084, 1089 (9th Cir. 2002). The document must be both predecisional and deliberative. <u>Id</u>. A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision." <u>Id</u>. Such documents include "recommendations, draft documents, proposals, suggestions. and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." <u>Id</u>. A document is deliberative if disclosure of the document would "'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" Id. at 1090. Factual matter is not deliberative, but the privilege applies if factual matter cannot be segregated from deliberative material. <u>FTC</u>, 742 F.2d at 1161. The burden of establishing the privilege is on the party asserting it and the privilege is to be narrowly construed. <u>N. Pacifica, LLC v. City of Pacifica</u>, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003); see <u>Carter</u>, 307 F.3d at 1088.

The deliberative process privilege is a qualified privilege. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." <u>FTC</u>, 742 F.2d at 1161 (and cases cited). Among the factors the court should consider in making this determination are: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. <u>Id</u>.

Defendants have invoked the privilege as to the 2004 draft mineral report with

Page 5 - ORDER

the declaration of Chris DeWitt, Mineral Section Chief. The report has been provided to the court for *in camera* review. Mr. DeWitt contends that the report is predecisional because it is not final since it has not been signed by a CRME, and it is deliberative because it contains the opinions and recommendations of the authors as to granting the patent. Mr. Dewitt contends that release of this draft report will chill the free flow of information the privilege is intended to protect prior to a final agency decision.

Plaintiff argues that the 2004 mineral report is not the type of intra- or inter-governmental document envisioned by the privilege and that it is not really deliberative in the sense that most of it contains factual data. Plaintiff also points out that the report is required by law to be done. Plaintiff argues that the report is either the basis for issuance of the patent or initiation of a contest case and that either way the applicant should be able to see it. Defendants do not dispute that an applicant is entitled to the mineral report but only after the review process and the report becomes "final." Defendants argue the government should be able to freely debate a draft report and make changes and revisions without fear of public disclosure before the report is final.

In view of the unique procedural history and facts of this case, the court is not entirely convinced that the 2004 mineral report at issue is the type of document envisioned by the privilege. However, assuming that it is, the court, after reviewing the applicable factors as discussed below, finds that, in this case, Plaintiff's need for the report and the need for accurate fact-finding, and the interests of justice, override the government's interest in non-disclosure.

(a) Relevancy

The 1997 mineral report is a part of the Administrative Record. The 2004 report states

that it "amends the April 2, 1997 original report." The 2004 report further states: "This amendment is not intended to stand alone but must be read and interpreted in conjunction with the original report." As a preliminary matter, it would seem fundamentally unfair to Plaintiff to allow the government to include the 1997 report which recommends against issuance of the patent but exclude the 2004 report which recommends issuance of the patent. This is especially true when the later report was generated based on a stipulation of the parties, was to be the last report and, on its face, is intertwined with the 1997 report. The 2004 report is certainly very relevant to the central issue in this case of whether the government's 18-year delay in making a decision on Plaintiff's patent is "arbitrary and capricious and an abuse of discretion." Plaintiff will presumably argue, in part, that the BLM position, told to Plaintiff in March 2008, that the 2003 sampling as discussed in the 2004 report was flawed from a methodology standpoint was a pretext to further delay making a decision on Plaintiff's patent claim. The government will argue that the 2003 samples were not done consistent with applicable regulations that required the recent further samples that were just completed.

(b) The Availability of Other Evidence

The court does not find the availability of other evidence eliminates the need for the 2004 report as part of the Administrative Record.

(c) The Government's Role in the Litigation

The government is a named defendant and its actions in handling Plaintiff's patent claim is central to this case.

(d) The Risk of Disclosure

The data from the 2004 report and, even the recommendation by the authors to issue the patent, have already been disclosed by Defendants to Plaintiff and his counsel. The court therefore sees little chance that the disclosure of the 2004 report will chill the important free exchange of opinion that is protected by the privilege.

Further, the court is not holding that draft mineral reports are never subject to the privilege. The court is simply holding that, under the particular facts of this case, Plaintiff's need, accurate fact-finding and the interests of justice override any privilege that may exist for the 2004 mineral report.

## ORDER

Based on the foregoing, the court orders that Defendants' motion to withhold a privileged document from the administrative record (#23) is denied; the 2004 mineral report shall be included in the administrative record. Defendants shall lodge the supplement to the administrative record by September 30, 2008.

IT IS SO ORDERED.

DATED this 17 day of September, 2008

_____
UNITED STATES MAGISTRATE JUDGE