FILED'09 FEB 11 13:54 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RONALD W. BYRD,**                                           Case Number CV 08-3054-CL

                    Plaintiff,                                        **ORDER**

          v.

**ABBIE JOSSIE; et al.,**

                    Defendants.

CLARKE, Magistrate Judge.

  Plaintiff Ronald W. Byrd has occupied public land for the purpose of mining, and applied

for patent of the mining claim in 1990.   Plaintiff brings this action for review under the

Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706, and/or writ of mandamus, 28

U.S.C. § 1361.  He names as defendants Abbie Jossie, Edward Shepard, James Caswell, and

Dirk Kempthorne, all in their official capacities with the Bureau of Land Management (BLM)

and/or the Department of Interior (Department).   This court has jurisdiction pursuant to 28

U.S.C. § 1331.  The parties have executed written consents for entry of judgment by a magistrate

judge (#18).  28 U.S.C. § 636(c).  The parties have presented this case for resolution by way of

cross- motions for summary judgment (#47, #57).  Following oral argument, defendants

Page 1 - ORDER

supplemented the administrative record (#65).  For the reasons explained below, plaintiff's

motion is granted in part and denied in part, and defendants' motion is denied.

## FACTUAL BACKGROUND

Plaintiff Ronald Byrd (hereinafter "Byrd") and his wife Carol  in 1987 purchased the

Bailey and Anderson placer mining claim, which is located along Galice Creek near where it

meets the Rogue River in Josephine  County, Oregon.  (AR 677, 679, 934, 949-967, 970-978.)

In March 1990,  Byrd and his wife Carol applied for a mineral patent under the General Mining

Law of 1872.  (AR 938-967.)   Carol Byrd passed away in October of 2006.  (AR 306 & Doc. #4

Attach 1 at 1.)

Byrd, by filing for a patent, is seeking to have  title to the property conveyed to him by the

United States.  Byrd received from the BLM his First Half Final Certificate (FHFC) on July 10,

1990.  The issuance of the FHFC confirms that all documents necessary to process the patent

application had been received by the BLM.  (AR 927-928.)    The next step in the process under

the 1872 Mining Law is the processing of a mineral examination and report that involves field

work, analysis, review and signature.

There is some dispute in the record but it appears that BLM certified mineral examiner

(CME) Gerry Capps met Byrd at the property in October1990, and took mineral samples from

two sites selected by Byrd.  Capps told Byrd that additional samples would be needed.  This is

discussed in the 1997 Mineral Report.  (AR 679.)  There does not appear to be any

contemporaneous documents in the administrative record confirming this October 1990 property

visit and mineral samples.

There is evidence in the record that Byrd moved onto the property, expended money for

Page 2 - ORDER

certain improvements, and did some mining. (AR 807, 810-813.)

Byrd in his moving papers indicates that, "On August 7, 1992, the BLM advised plaintiff that his patent application was 'on hold.'" (Plaintiff Memorandum in Support at p. 4.) As noted by plaintiff, there is no support for this in the administrative record.

The BLM sent a letter to Congressman Robert Smith on October 6, 1992, that stated that the mineral examiner had "already done the required field examination" for the claim. (AR 891-892.) The BLM also in the letter advised Congressman Smith that the average time to process a patent application like Byrd's was three years. (AR 891.)

In September 1993 the BLM notified Byrd that it wanted to complete the mineral examination by taking additional samples. (AR 869, see AR 858-859.) A tentative date was set for November 15, 1993, weather permitting, for the examination. (AR 869.) Byrd and his then counsel objected to further examination and advised the county sheriff that the BLM was trespassing on his mining claim. (AR 863-864, 867-868.) In January 1994, Byrd allowed CME Capps to come on the property to map the two sample sites taken in October 1990 but did not allow more samples. (AR 679.)

Effective April 25, 1995, Public Land Order 7136 withdrew from mineral entry part of the Galice Creek area, including the entire Bailey and Anderson claim. (AR 835-36; see AR 837-840; AR 249 & Doc. #12 June 2008 Declaration of Parry, Par. 4.) A moratorium was also put in place on the processing of all patent applications in 1994. There is no indication in the record that the moratorium affected Byrd's application.

The BLM commenced a patent contest against Byrd on March 13, 1997, alleging that there was no valid discovery of a valuable mineral deposit on the mining claim and that the

mining claim was not occupied in good faith for purpose of prospecting, mining or processing under the mining laws. (AR 759-763.) The case was assigned to Administrative Law Judge William Hammett.

A mineral report was issued about a month later on April 2, 1997, which concluded that based on the two samples taken, the mining claim did not contain a valid discovery of a valuable mineral deposit. (AR 672-734.)  A certified review mineral examiner (CRME) signed the report on April 7, 1997. (AR 672.) The 1997 mineral report stated that there was no evidence of mining activity during the past six years. (AR 675-676.)  The report also confirmed that Byrd was occupying the property as his personal residence. (AR 676, 679.) A stipulation was reached to allow Byrd to live on the property pending a final determination on his patent claim. (AR 665-669, 741-747.)

In September 2002, representatives from BLM met with Byrd and his counsel at the property. (AR 584, 598.) The parties discussed further mineral samples before proceeding to the contest hearing. (AR 584.)

The parties negotiated a stipulated order for further sampling that was signed by Administrative Law Judge Hammett on October 18, 2002. (AR 549-553, 572-577.) The October 2002, order provided for the BLM to take six samples and possibly more. The order required the sampling to be performed in accordance with both the BLM placer examination handbook and the BLM mineral examiners' handbook.  The order further provides " [n]either Contestant nor Contestees will offer as evidence any additional sampling data from samples obtained from the claim at further proceedings." (AR 551.) Finally, the order provides that, "This Order shall be binding on the Parties, their officers, agents, successors and assigns, and those in privity

Page 4 - ORDER

therewith." (AR 552.)  The contest hearing, which had been set on October 28, 2002, was

postponed pending the additional sampling.  (AR 552, 635.)

At this same time, on September 20, 2002, the BLM issued a supplemental report to the

1997 mineral report.  (AR  589-597, 1099-1112.)  Plaintiff claims in his memorandum that he

was unaware of this report until it was made a part of the administrative record in October 2008.

The additional sampling occurred on June 30 and July 1, 2003.  (AR 542-547, 1052-

1053.)  Pursuant to directions from Judge Hammett, the BLM provided Byrd the raw data from

the 2003 samples on March 31, 2004, in preparation for the contest hearing which had been set

on July 26, 2004.  (AR 487-488, 496, 518.)   Another mineral report was prepared and signed by

CMEs David H. Taylor and Steven N. Storo on May 21, 2004, and by management on May 28,

2004.  (AR 1043.)  This 2004 report supported issuance of the patent to Byrd.  (AR 1048.)

On June 14, 2004, the Department moved to postpone the contest hearing set for July 26,

2004.  (AR 479, 518.)  The grounds set forth in the motion were as follows:

> The contestant's mineral examiners completed an amended mineral report
> for the Bailey and Anderson placer gold claim on May 21, 2004.  Based on
> their analysis, the mineral examiners have recommended issuance of patent
> for the claim.  Before this report becomes final for the United States,
> however, a Bureau of Land Management certified mineral review examiner
> must review it.  On June 8, 2004, the contestant notified its counsel that the
> review process will take approximately one year to complete.  Because the
> report is not final, the contestant is not prepared at this time to withdraw its
> contest complaint.  Consequently, the United States respectfully requests a
> one year postponement of the hearing . . . .

(AR 479.)  Byrd concurred in the postponement contingent on delivery of the amended mineral

report, but remarked that the one-year postponement for technical review proposed by the

Department may be unreasonable in light of BLM's policies and manuals.  (AR 475-478.)  The

motion was apparently granted.  (See AR 474.)

The May 2004 mineral report was reviewed by CRME Charles Horsburgh and  CME Bob Lewis, and the resulting March 2005 memorandum, written by CRME Horsburgh and incorporating comments by CME Lewis, was critical of the mineral report.  (AR 469-472.)  One of the alleged deficiencies identified by the CRME was that the bedrock and overlying gravels were not analyzed separately, which potentially resulted in a overstatement of the mineral deposits on the mining claim by as much as 75 to 80 percent.   CRME Horsburgh also claimed that the 2004 mineral report relied on limited samples to calculate resource values.  (AR 470-472.)

One of the authors of the 2004 mineral report left government service in 2005.  (AR 250 & Doc. #12 June 2008 Declaration of  Parry, Par. 10; AR 461.)

On July 26, 2006, the Department responded to a request for a status update from Judge Sweitzer[1] by advising that the mineral examiners were still recommending issuance of the patent, and that the report lacked a mineral examiner's signature and was expected to be finalized by November 30, 2006.  (AR 464.)  There was no mention to the ALJ or to Byrd about the March 2005 critical CRME review.  (AR 466.)

The Department on October 5, 2006, moved to dismiss the patent contest without prejudice.  (AR 457-463.)  The Department stated; "The BLM anticipates that it will finalize the [mineral] report which will include its recommendation regarding patent, by Spring 2007."  (AR 458.)  The attached Declaration of Patrick Geehan, Acting Chief, Branch of Land and Mineral Resources, for the Oregon/Washington Bureau of Land Management, in an attached declaration,

---

[1] The contest case was transferred to another division in June 2006.

declared to Judge Sweitzer that the mineral report was signed by both CMEs Dave Taylor and

Steve Storo on May 21, 2004.  (AR 460.)  He further advised that CRME Charles Horsburgh had

provided technical review by memorandum dated March 18, 2005.  (AR 461.)  There was no

indication that the March 2005 review had been critical or what specific efforts the BLM had

made since March 2005 to correct any alleged deficiencies in the May 2004 mineral report.  The

patent contest was dismissed without prejudice on October 16, 2006.  (AR 455.)

There is an internal BLM email message in the record dated October 23, 2006, from

Diane Parry to Abbie Jossie referring in part to the October 16, 2006, dismissal order.  (AR 454.)

Ms. Parry states in her email  that Mariel Combs was not aware of the March 2005 technical

review of the mineral report when she filed the status report with the Administrative Law Judge

on July 26, 2006.  Further, in the email she states that it was two days later when  Ms. Combs

found out that the May 2004 report had been "'ripped to shreds by the reviewer.'"  (AR 454.)  Ms.

Parry states that "Marial has had a extremely difficult time getting information regarding this

case." (AR 454.)  Finally, the memorandum concludes by stating, "And yes, the Byrds know the

report supports patent (don't ask me why or how)."  (AR 454.)

CME Steve Storo, one of the authors of the May 2004 mineral report, sent an email to

Diane Parry on January 31, 2007, stating that "Byrd should be done (spring/summer 2007)

without requiring any more samples."  (AR 402.)

In December 2007, CMEs Steve Storo and Bob Lewis, and BLM geologist Kirby Bean

met to review the Byrd claim and discuss "a number of problems with the data obtained during

previous BLM mineral examinations in 1990 and 2003."  (AR 389.)  It was recommended that

the "BLM resample and remap the Bailey and Anderson placer claim in order to correct the

Page 7 - ORDER

identified deficiencies." (AR 390.)  The BLM  notified Byrd of its plan to resample by letter

dated March 12,2008.  (AR 386-387.)

Byrd filed a complaint in this court on May 15, 2008,  under the General Mining Law of

1872, 30 U.S.C. § 21 et seq., the Administrative Procedure Act, 5 U.S.C.§§ 701-706 and/or a

Writ of Mandamus, 28 U.S.C. § 1361.    Byrd seeks the following relief:

> 1. An order from this court to BLM directing the agency to immediately
> issue a decision on plaintiff's mineral patent application to either immediately
> issue patent or immediately institute patent contest proceedings if such is
> presently warranted.
> 2. An order temporarily and preliminarily enjoining BLM from further re-
> mapping or re-sampling plaintiff's mining claim, as may be requested hereafter by
> plaintiff.
> 3. For plaintiff's costs of litigation, including attorney fees, as may be
> permitted by applicable rule or law, including the Equal Access to Justice Act.
> 4. For such other relief as is just and proper.

(Compl. at 11-12.)

The court on June 5 ,2008, denied Byrd's Motion for a Preliminary Injunction to stop the

BLM from further mineral examination on the property.  The BLM estimated that, to complete

the mineral report, it would take nine to twelve months of the completion of sampling.  (AR 253

& Doc. #12 June  2008 Parry Decl. Par. 19.)  The court ruled that, as fee owner, the government

had the legal right to do further mineral examination.  The court did not have the complete

administrative record at that time.  The court did not rule that any further sampling or

examination would, or would not, be admissible in any further patent contest proceeding.

On June 8 to 18, 2008, the BLM conducted the first half of its sampling effort.  (Doc. #59

Dec. 2008 Parry Decl. Par 8.)  The BLM took additional samples on September 8 to 12, 2008.

(Doc. #59 Dec. 2008 Parry Decl. Par. 9.)   The Second Declaration of Diane Parry sets forth the

procedures the BLM intends to follow to complete the mineral report and review process. At

oral argument of this matter on January 21, 2009, the BLM represented to the court that the

technical data was back from a third party contractor but that a written mineral report was not

expected for approximately a year and then it would take another 45 to 60 days for the additional

technical review and signature needed. The attorney for Byrd advised the court on January 21,

2009, that, if the BLM commences another patent contest, it can takes years to get a hearing date.

**DISCUSSION**

Plaintiff seeks an order from this court finding that the BLM has failed to comply with its

obligation to render a decision on plaintiff's application for mineral patent within a reasonable

time and directing the BLM to immediately make a decision on his application by either

approving plaintiff's patent or instituting a patent contest. Plaintiff further requests that the

BLM's decision be made based on the evidence that existed as of the date the complaint in this

action was filed, that is, evidence collected by mineral sampling through 2003. Defendants

contend that plaintiff fails to allege facts demonstrating unreasonable delay under the relevant

factors to entitle him to relief under the APA, and that plaintiff fails to allege facts warranting

mandamus relief. They contend that no intervention by the court is necessary, and that they are

continuing to process his patent application and are completing a mineral report based on the new

2008 sampling.

**General Mining Law and Patent Application Process**

Under the provision of the General Mining Act of 1872, 30 U.S.C. §§ 22-54 (the Act), an

individual may enter and explore public lands in search of valuable minerals. 30 U.S.C. § 22.

If valuable minerals are discovered, the claimant may file a mining claim which, if approved,

Page 9 - ORDER

entitles the claimant to the right of exclusive possession of the mining claim, as long as the

requirements of the Act are met. Swanson v. Babbitt, 3 F.3d 1348, 1350 (9th Cir. 1993). A

mining claimant has the exclusive right to possession of the surface resources and may extract

the minerals without paying royalties to the United States. Independence Mining Co. v. Babbitt,

105 F.3d 502, 506 (9th Cir. 1997); Lara v. Sec'y of Interior of United States, 820 F.2d 1535,

1537 (9th Cir. 1987); 30 U.S.C. § 26. When a mining claimant has an unpatented mining claim,

fee title and ownership of the land remains with the United States. Independence Mining, 105

F.3d at 506; see Swanson, 3 F.3d at 1350. While not required, a claimant who possess a valid

mining claim may go through the additional process to obtain a patent, thereby purchasing the

land and minerals from the United States and obtaining ultimate title to them. Swanson, 3 F.3d

at 1350; Independence Mining, 105 F.3d at 506.

Patenting of a mining claim is governed by the Act. After filing an application and

paying the purchase price, the Secretary signs a "first half of mineral entry final certificate" which

is the Department's administrative recording of the applicant's compliance with the initial

paperwork required under the Act. Independence Mining, 105 F.3d at 506. A patent is not

issued until there has been a determination that the claim is valid. Id. To determine whether a

claim is valid, "a mineral examiner must do a field examination; collect and analyze samples;

estimate the value of the mineral deposit and the cost of extracting, processing and marketing the

minerals, including the costs of complying with any environmental and reclamation laws." Id. at

506-07. After completion of the mineral report, the application undergoes legal and secretarial

review and, if approved, a patent will be issued. Id. at 507. The right to a patent accrues when

the claimant has filed a proper patent application, has paid the fee, and it is determined that the

Page 10 - ORDER

mining claim is a valid claim.  Swanson, 3 F.3d at 1353; R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1063 (9th Cir. 1997).

**Mandamus Remedy and APA Relief**

Plaintiff seeks mandamus relief in his motion, seeking an order that defendants immediately render a decision on plaintiff's application for mineral patent.  District courts have the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Mandamus relief may be ordered if the three elements of the mandamus test are met.  R.T. Vanderbilt, 113 F.3d at 1066 & n.5; Independence Mining, 105 F.3d at 507.  Under the APA, the reviewing court "shall" "compel agency action unlawfully withheld or unreasonable delayed."  5 U.S.C. § 706(1); see Forest Guardians v. Babbitt, 174 F.3d 1178, 1191 (10th Cir. 1999) (under clear command of § 706, "once a court deems agency delay unreasonable, it must compel agency action").  Courts apply the factors of Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) (TRAC), in determining whether relief under the APA should be granted.  Independence Mining, 105 F.3d at 507; Nat'l Wildlife Fed'n v. Cosgriffe, 21 F. Supp.2d 1211, 1218 (D. Or. 1998).  The Ninth Circuit has determined that, because the relief sought under a claim seeking mandamus and one seeking relief under the APA "is essentially the same," a plaintiff's entitlement to relief should be analyzed under the APA.  Independence Mining, 105 F.3d at 507 (citing Japan Waling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 n.4 (1996)); R.T. Vanderbilt, 113 F.3d at 1065 (recognizing that mandamus relief and relief under the APA are "'in essence'" the same")).  Thus, whether defendants' duty is ministerial, which would support mandamus relief, or discretionary, which would support relief under the APA, is of no moment.

Page 11 - ORDER

As the Ninth Circuit has found, "at some level, the government has a general, non-discretionary duty to process the applications in the first instance. In other words, even if the acts were discretionary, the Secretary cannot simply refuse to exercise his discretion." Independence Mining, 105 F.3d at 507 n.6 (citing Marathon Oil v. Lujan, 937 F.2d 498, 501 (10th Cir. 1991). In Marathon Oil v. Lujan, 937 F.2d 498, 500 (10th Cir. 1991), the Tenth Circuit found that administrative agencies "do not possess the discretion to avoid discharging the duties that Congress intended them to perform," and that, "Congress intended the defendants to process oil shale mining patent applications." Orion Reserves Ltd. P'ship v. Kempthorne, 516 F. Supp.2d 8, 12 (D.D.C. 2007) ("the Department and BLM have a Congressional duty to process . . . mine patent applications"), appeal not considered by ___ F.3d ___, 2009 WL 153210 (D.C. Cir. 2009). Moreover, where an adequate remedy is provided by the APA, the Ninth Circuit has questioned whether the traditional mandamus remedy applies. See Independence Mining, 105 F.3d at 507 n.6. While plaintiff couches the relief he seeks in terms of mandamus relief, both parties discuss application of the TRAC factors.

### TRAC Factors

In TRAC, the court set forth the following factors to guide the court in assessing whether agency delay has been unreasonable so as to warrant relief:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less  tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority [;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay [;] and (6) the court need not "find any impropriety

lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

Independence Mining, 105 F.3d at 507 n.7 (quoting TRAC, 750 F.2d at 80).

### Factors 1 and 2:  Rule of reason and congressional timetable

It is clear that, while the General Mining Law provides no express timetable or deadline for the issuance of a patent, the Ninth Circuit has found that the statute implies that the issuance of a patent must be completed "within a reasonable time" or "'expeditiously'" under the circumstances.  Independence Mining, 105 F.3d at 507; Larson v. Lujan, 976 F. Supp. 1406, 1409-10 (D. Utah 1992) (by enacting the mining laws, Congress placed duty on Department to process mineral patent applications in a timely fashion); see Forest Guardians, 174 F.3d at 1191 n.19 (and cases cited).  Although acknowledging that the "rule of reason" may require that agencies act in a timely manner, defendants appear to argue that they cannot be legally bound to act within any time frame.  The District of Columbia has determined that a "rule of reason" assumes that a decision will be made within "a reasonable time encompassing months, occasionally a year or two, but not several years or a decade." MCI Telecomms. Corp. v. FCC, 627 F.2d 322, 340 (D.C. Cir. 1980); see TRAC, 750 F.2d at 80; Orion Reserves, 516 F. Supp.2d at 14 (requiring completion of processing of mining applications within a reasonable time as defined in MCI Telecommunications).

In 1996, Congress did supply a time frame within which the Department was required to act on pending patent applications.  The Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, directed the Secretary to make final determinations within five years as to ninety percent of the pending patent applications which

Page 13 - ORDER

were not subject to the moratorium.  See Independence Mining, 105 F.3d at 507.

In addition, BLM manuals, although not legally binding, see Schweiker v. Hansen, 450 U.S. 785, 789 (1981), set forth the agency's policy and procedures, and give direction to the agency.  BLM manuals supply time frames for the various steps involved in processing  mineral patent applications.  See e.g., BLM Manual MS-3860 "Mineral Patent Applications." [2]  The court believes that the manuals provide some context for BLM action where patent applications have been made.  See Independence Mining Co. v. Babbitt, 885 F. Supp. 1356, 1358 & n. 4 (D. Nev. 1995), aff'd, 105 F.3d 502 (9th Cir. 1997); Barrick Goldstrike Mines, Inc. v. Babbitt, No. CV-N-93-550-HDM(PHA), 1995 WL 408667, *5 & n.7 (D. Nev. Mar. 21, 1994).

In any event, throughout the processing of plaintiff's application , the BLM or the Department has advised plaintiff or the administrative law judge in the contest hearing proceedings of various dates when  an anticipated event would be completed, detailed below.  It is noteworthy that, in October 1992, the BLM wrote to Congressman Robert Smith in response to

---

[2]  Defendants argue that the manual provisions cited by plaintiff predate the moratorium and institution of the chain of command review procedures now used by the Department. However, the cited manual appears to be effective currently and can be obtained from the BLM's website, which indicates that the list of BLM manuals was last updated on January 6, 2009, http://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/blm_manual.html (last visited Feb. 3, 2009).  Two of the handbooks provided by defendants as a supplement to the administrative record following the hearing of this matter (#65) can also be obtained from the BLM website, http://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/blm_handbooks.html (last visited Feb. 3, 2009).

BLM Manual 3860, cited by Byrd, provides that mineral reports are due within six months of all work by the mineral examiner; the mineral report review should take thirty days and, if returned to the mineral examiner for revisions, revisions should be completed within thirty days; and, as applicable to Oregon, "the mineral patent shall be issued or a contest action initiated within 30 working days of the adjudicator's receipt of the approved mineral report from the State Office mineral report reviewer."

his inquiry on behalf of plaintiff regarding plaintiff's application for patent for his mining claim. The BLM district manager stated in his letter to Congressman Smith that, "The entire process from application to issuance of patent or denial of the application averages three years." (AR 891.) He represented that the geologist had already done the required field examination and, after reviewing the patent application process generally, closed by stating that, "We are working to complete these exams as quickly as possible; we hope to have those in the Galice area, including Mr. Byrd's, completed by the end of this fiscal year."[3]  (AR 892.)

The record indicates that the FHFC was issued promptly following application for a patent on the claim, and that geologist Capps met with plaintiff on the property in the fall of 1990 and took two mineral samples.  In October 1992, the BLM advised Congressman Smith that the field examination on the claim had been done and that it was hoped that the "exams" would be completed by the end of the fiscal year.  Almost one year later, in September 2003, the BLM notified plaintiff that it wanted to take additional samples, and a tentative date was set to do this in November 1993.  Plaintiff objected to the additional sampling.  Capps was allowed onto the property in January 1994 to map the two sites, but no additional samples were taken.  Nothing of substance relating to plaintiff's patent application appears in the record until March 1997, when the BLM commenced a proceeding to contest the patent.

While the record shows that plaintiff contributed somewhat to any delay on the processing of his patent application when he objected to the resampling in late 1993, the record does not support the seven-year delay from application to commencement of the contest

---

[3]  The fiscal year is from October 1 through September 30.

Page 15 - ORDER

proceeding, particularly the three-year period from January 1994 to March 1997 when the contest complaint was filed. Although Byrd must bear some responsibility for the delay, defendants can enter the property as fee owner of the land. Defendants indicate that in 1994, a patenting moratorium was instituted, see R.T. Vanderbilt, 113 F.3d at 1067 (finding that moratorium on processing of patent applications began October 1, 1994), but the moratorium on processing patent application did not affect Byrd's application, so no delay can be attributed to the moratorium. See Orion Reserves, 516 F. Supp.2d at 12; see also Independence Mining, 105 F.3d at 509 & n.9.

After the contest proceeding was commenced in March 1997, nothing much appears in the record until 2002, when notice was given that the contest hearing was set for October 28, 2002. Plaintiff's counsel explained to the court at oral argument of this matter that it takes about five years to get a contest hearing date. It appears that nothing was done regarding the mineral report for plaintiff's claim until September 2002 when a supplemental report was prepared by Capps and the parties met at the property in preparation for the October hearing. At that time, the parties agreed that additional testing would be done. A stipulation was reached and an order was signed by Judge Hammett in October 2002. As a result of the anticipated testing, the contest hearing was stayed "until the earliest available date after August 1, 2003." (AR 552.)

As detailed above, the additional sampling took place in the summer of 2003 and a mineral report was signed by both CMEs Taylor and Storo, and management, in May 2004.

In June 2004, the Department sought a postponement of the July 26, 2004, hearing for one year to allow for technical review. As set out above, plaintiff concurred in the postponement contingent on receipt of the mineral report, but pointed out that the one-year sought by the

Page 16 - ORDER

Department was unreasonable in light of the time guidelines in the BLM manual.

In a July 26, 2006, status report to Judge Sweitzer, the Department advised that a signature by a mineral examiner was required before the report became final, which was expected no later than November 30, 2006. However, at the time of these representations to the hearings judge, the mineral report had been signed by both mineral examiners in May 2004 and, more critically, technical review had been done in March 2005. See supra. As noted above, no mention was made of the March 2005 technical review. Byrd and his counsel were unaware at the time of the status report that technical review had been done. Moreover, there is nothing in the record to show that anything was being done to rectify any of the deficiencies found by CRME Horsburgh and CME Lewis.

The record shows that days after the representations made to Judge Sweitzer in July 2006, Department counsel, Mariel Combs, and BLM Acting Chief Geehan learned of the March 2005 technical review report by Horsburgh; and that Ms. Combs, at least, had found out the 2004 mineral report had been "'ripped to shreds by the reviewer.'"  (AR 454.)

On October 5, 2006, prior to the December 2006 prehearing conference set in the contest proceeding, the Department moved to dismiss the mineral contest without prejudice, representing that the CRME's comments from the March 2005 technical review were "currently" being incorporated into the report (AR 461) and that the BLM anticipated that it would finalize the report, including its recommendation, by spring 2007. As noted above, there was no indication to the hearings judge or Byrd that technical review had been critical of the 2004 mineral report.

The record shows that CME Steve Storo advised Diane Parry in January 2007 that Byrd should be done in spring/summer 2007 without any more samples required. Yet in December

2007, following a meeting between BLM geologists, including Steve Storo and Bob Lewis, it was recommended that, due to problems with data obtained in the 1990 and 2003 mineral examinations, Byrd's claim be resampled and remapped to correct deficiencies.

There was some unexplained delay between 1994 and March of 1997 when the contest proceeding was initiated, some of which Byrd may be responsible for, and the 1997-2002 delay is understandable as due to the procedure inherent in patent contest proceedings. However, the court is concerned with the time period after technical review in March 2005. The additional sampling done in 2003 was a result of a stipulation entered into between the parties in the contest proceeding and was contemplated as the last sampling of the claim which would resolve the contest one way or the other. The court questions why the critical technical review was not made known to Department counsel until the end of July 2006, the contest proceeding was dismissed on the Department's motion without any disclosure to the hearings judge or Byrd, and it appears nothing much was done regarding the identified deficiencies until late 2007. Byrd had no knowledge until March 2008 that BLM claimed the 2003 sampling was allegedly inadequate. (AR 308.) Up to this point, Byrd reasonably could believe that patent would be issued on his mining claim. It appears from defendants' submissions that a decision on Byrd's application will be years away. In the circumstances, the court finds that the latter delays tip the scale toward unreasonable delay. Considering the totality of the circumstances in this case, the court finds that the timing factors weigh overwhelmingly in favor of a finding of unreasonable delay.

### Factors 3 and 5: Economic harm, public welfare, and other interests

Byrd recognizes that the mining law deals primarily with economic conditions. However, he contends that the manner in which the agency has applied the law has resulted in significant

Page 18 - ORDER

adverse effects on human welfare.  The record indicates that Byrd intends to operate a small mining business on the property.  As is shown in the record, Byrd has spent the last eighteen years pursuing a patent on his mineral claim.  He declares that he has spent "tens of thousand of dollars on the patent application process over the last 18 years."  (AR 308; Doc. #4 Attach 1 at 3.)  The record shows that Byrd has put in a telephone line and has constructed a shop on the property  for his mining operations, expending about $4,000.  He has also added "improvements in the form of structures," including two ponds.  His mining equipment was valued at $25,000 to $35,000 in 1996.  Byrd and his family have occupied a home on the property since 1987 and he has paid taxes on the property.  (AR 807, 810-815.)

Defendants assert that plaintiff does not need a patent to mine the claim.  See Independence Mining, 105 F.3d at 509-10; Orion Reserves, 516 F. Supp.2d at 15.  However, it appears from the record that, due to the withdrawal by the Department and the BLM of certain property in the Galice Creek area from mining, including Byrd's claim, Byrd may be unable to mine his claim without a patent.

While the harm involved here is primarily economic harm, rather than harm affecting the public health and welfare, Byrd has a possessory interest in the property and he has a right to fair administration by the BLM and the Department of his rights under the mining law.  See  United States v. Shumway, 199 F.3d 1093, 1099-1103 (9th Cir. 1999).  Further, taking a lengthy time to process a patent application, involving repeated samplings of the same claim, undermines the public's confidence in the decision-making ability of the BLM.  See Independence Mining, 885 F. Supp. at 1361 (five-year wait for mineral examination cannot instill confidence in federal government).

Page 19 - ORDER

While these factors do not strongly support a finding of unreasonable delay, they do not detract from such a finding.

### Factors 4 and 6:  Competing priorities, intentional delay, and bad faith

In considering these factors, the Ninth Circuit has stated that, "'[w]here [an] agency has manifested bad faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its priorities.'" Independence Mining, 105 F.3d at 510 (quoting In re Barr Labs., Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)).  In their briefing, defendants contend that Byrd provides no basis for the court to award him the highest priority of pending applicants when to do so would result in delay to other applicants who have had applications pending substantially the same amount of time and which may be further along in the process.  In  support of  their argument, defendants refer to the patent application by Davy Lee Waters and Sannaraha Waters, whose mining claim is also in the Galice Creek area.  It is noteworthy that the Waterses applied for a patent in 1987; a contest proceeding was initiated in 1991 and a decision rendered in 1993; and the IBLA rendered its decision in 1998, a period of approximately eleven years.  Since then, the IBLA decision was reviewed in this court and the Ninth Circuit vacated the IBLA's decision in 2005, remanding the case for further proceedings before the administrative law judge.  See Waters v. Jossie, No. Civ. 03-3073-CO, 2004 WL 2429842 (D. Or. Oct. 28, 2004); Waters v. Jossie, 155 Fed. Appx.  984 (9th Cir. 2005).  In contrast, there is not even a final mineral report on Byrd's claim to date.  At oral argument, defendants represented that there are four applicants in Oregon with seniority similar to Byrd's--applicants who applied for patents contemporaneously with Byrd.  Plaintiff's counsel states, and the record indicates, that three pending patent applicants are in the Galice

Creek area.[4]  The court has no information as to these applications other than the information above relating to the Waterses' claim and application.

There is evidence in the record which could support the reasonable inference that no decision will be made on Byrd's patent application until the mineral report supports not granting a patent.  First, as plaintiff's counsel pointed out at oral argument, three of the currently pending patent applicants in Oregon, including Byrd, have mining claims in the Galice Creek area, which area has been withdrawn from mineral entry since 1995.

Second, in 2002, during the contest proceedings, the parties entered into a stipulation whereby the BLM would take additional samples from Byrd's claim.  It was stipulated that, *"The sampling results shall be admissible* in further proceedings *to establish* either the existence or nonexistence of a valuable discovery," and that, *"Neither* Contestant nor Contestees *will offer* as evidence *any additional sampling data* from samples obtained from the claim at further proceedings."  (AR 551 (emphases added).)  The order provided that it "shall be binding on the Parties, their officers, agents, successors and assigns, and those in privity therewith."  (AR 552.) Byrd has declared that he was not in favor of the 2002 order but he agreed to it "based on the understanding that this would be the last sampling done on my mining claim as a requirement for me to get patent."  (AR 307.)  He also declares that he and his wife would never have agreed to the order allowing additional sampling had they known that the BLM would later claim that the testing was inadequate.  (AR 308.)  Yet, five years after obtaining the sampling results as stipulated, defendants sought further sampling, which led to the instant lawsuit.  Defendants now

---

[4]  A May 15, 2008, BLM email message states there are three pending patents in the Galice Creek area:  Byrd, Prow, and Waters.  (AR 336.)

contend, referring to the agreement to limit sampling in 2003, that "the force and effect of such an agreement is questionable." (Defs. Mem. at 24.)

Further, during the pendency of the contest proceeding, the May 2004 mineral report resulting from the stipulated sampling, was "'ripped to shreds by the reviewer'" Horsburgh in the March 2005 technical review. (AR 454.) The status of the mineral report and the fact of, and results of, technical review were not made known to Ms. Combs when she advised Judge Sweitzer of the status of the case in July 2006. However, Ms. Combs and Mr. Geehan were aware of the critical technical review in October 2006, when the Department moved to dismiss the contest proceeding. At that time, the record before the hearings judge indicated that the mineral report recommended issuance of patent, and Byrd and his counsel were aware of this due to the disclosure made during the proceeding. The motion to dismiss only stated that technical review had been done and the comments were being incorporated into the report. There was nothing in the motion or accompanying declaration to indicate that any serious problems were found in the 2004 mineral report. In light of the stipulated order in the case, it is possible that, if Judge Sweitzer had been made aware of the alleged problems, the contest proceeding may not have been dismissed, and Byrd and the hearings judge could have addressed the issues at that time. Instead, it was not until March 2008, three years after the technical review and one-and-one-half years after the contest proceeding had been dismissed, that Byrd was told of the alleged problems with the 2004 mineral report and told that BLM wanted to conduct further sampling.

The record shows that Byrd made several FOIA requests during the pendency of his patent application to obtain information relating to the application. He was not made aware of the alleged problems found in the March 2005 technical review for three years, during which

Page 22 - ORDER

time the contest proceeding was dismissed on the Department's motion.  In this regard, it is noted

that, in October 2006 following dismissal of the contest proceeding, Ms. Parry questions "why or

how" the Byrds knew that the 2004 mineral report supported patent.  (AR 454.)

The court will not make a finding of bad faith by the BLM and/or the Department in this

case, but their actions and inaction, in the circumstances revealed in the record, are suspect.  A

finding of bad faith is not required for the court to find unreasonable delay, however.   The court

finds that these factors weigh in favor of a finding of unreasonable delay.

### Conclusion

As the District of Columbia Court of Appeals found in <u>Barr Laboratories</u>, 930 F.2d at 75:

"especially shabby treatment of one applicant" would seem to be "egregious" agency delay.

Considering the relevant factors in the totality of the circumstances, the court finds that

defendants have unreasonably delayed in making a decision on Byrd's application for patent.

Defendants assert that they are moving expeditiously to finalize the mineral report  based

on the 2008 sampling, and that no court intervention is necessary.  Ms. Parry represents in her

most recent declaration that the time frame to complete a final mineral report "assumes the

mineral report will continue[] to be assigned the highest priority at the local level."  (Doc. #59

Dec. 2008 Parry Decl. Par. 16.)

However, considering  the fact that there is no final mineral report on Byrd's claim after

eighteen years, including nine years in contest proceedings, and considering that the BLM

anticipates at least another year--to February 2010--before a mineral report would be final, before

it would be submitted for Department review as to which time the BLM cannot estimate, the

court finds that its intervention is warranted in the circumstances.   The court recognizes that it is

Page 23 - ORDER

unusual for a court to order an agency to take action, but it will be done when circumstances

warrant. See Nat'l Wildlife Fed'n, 21 F. Supp.2d at 1219 (considering TRAC factors and

ordering BLM to prepare comprehensive management plan by date certain) (and cases cited);

Hells Canyon Pres. Council v. Richmond, 841 F. Supp. 1039, 1048-49 (D. Or. 1993) (finding

BLM delay in promulgating regulations unreasonable whether five years or eighteen years

considered; setting schedule for publication, comment, and promulgation of final regulations);

see also Liu v. Chertoff, No. CV-06-1682-ST, 2007 WL 2435157, *8-*11 (D. Or. Aug. 29,

2007), adopted by order, (Doc. #56) (defendants ordered to complete adjudication of application

to register permanent resident by date certain).

     Defendants seem to contend that nothing can be done until a mineral report is finalized.

The handbooks submitted by them as a supplement to the administrative record at the court's

request, however, do not support their contention.  (AR 1113-1131, Doc. #65.)  It is noteworthy

that the contest proceeding initiated in this case was filed before the 1997 mineral report was

completed.  Thus, it appears that defendants would not be foreclosed from initiating a contest

proceeding, if they so choose, and working to finalize a mineral report.

     Accordingly, defendants shall make a decision either to grant Byrd's patent or to initiate a

contest proceeding within thirty (30) days.  Further, if defendants initiate a contest proceeding,

defendants are to cooperate with Byrd and his counsel to do everything within their power to

expedite the contest proceedings.

     By allowing defendants to proceed with the additional sampling in June 2008, the court

was not in any way ruling that those sampling results would, or would not, be admissible in any

subsequent contest proceeding.  The court made its ruling on the basis that the United States, as

Page 24 - ORDER

fee owner of the property, had the right to do the examination.

Although the court does not rule on this issue, it notes that defendants contractually agreed to be bound by the provisions of the 2002 stipulated order, which specifically provided that the sampling results obtained as a result of the order "shall" be admissible in further proceedings "to establish" the existence or nonexistence of a valuable discovery and that, "Neither Contestant nor Contestees will offer as evidence any additional sampling data from samples obtained from the claim at further proceedings." (AR 551.) It appears, based on this language, that the 2008 sampling results would not be admissible in further proceedings. However, this issue will need to be litigated in another forum.

### ORDER

Based on the foregoing, the court orders that plaintiff's motion for summary judgment (#47) is granted in part and denied in part and defendants' motion for summary judgment (#57) is denied:        It is ordered that defendants shall, within thirty (30) days of the court's order and judgment, by March 13, 2009, make a decision to either grant plaintiff's patent or institute a contest proceeding. If defendants choose to initiate a contest proceeding, defendants are to cooperate with plaintiff and his counsel to do everything within their power to expedite the contest proceedings.

IT IS SO ORDERED.

DATED this _____ day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

Page 25 - ORDER